George Torgun (Bar No. 222085)
Erica A. Maharg (Bar No. 279396)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: george@baykeeper.org
Email: erica@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>CSL OPERATING, LLC,<br><br>            Defendant. | Civil No.  5:15-cv-5633<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*) |

COMPLAINT

Plaintiff San Francisco Baykeeper ("Baykeeper"), by and through its counsel, alleges as follows:

## INTRODUCTION

1.      This is a citizen suit, brought pursuant to section 505(a)(1) of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(1), to address violations of the CWA by Defendant CSL Operating, LLC ("CSL" or "Defendant") arising out of operations at a plating facility located in Santa Clara, California.  Since June 20, 2011, CSL has been discharging and continues to discharge polluted stormwater from its facility located at 529 Aldo Avenue, Santa Clara, California 95054 (the "Facility") in violation of the express terms and conditions of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1342.  Since June 20, 2011, CSL has also violated the General Industrial Stormwater Permit issued by the State of California, NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Permit") and Order No. 2014-0057-DWQ ("2015 Permit") (collectively, the "Industrial Stormwater Permit").  Baykeeper seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees, for CSL's repeated and ongoing violations of the Clean Water Act.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 2201 (declaratory relief).

3.      On September 17, 2015, Baykeeper provided notice of intent to file suit against CSL for CSL's CWA violations ("Notice Letter") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board") (collectively, "state and federal agencies"), and CSL, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A).  A copy of the Notice Letter is attached as Exhibit 1.

4.      More than sixty (60) days have passed since the Notice Letter was mailed to Defendant and the state and federal agencies.  Neither EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.  No claim in this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33 U.S.C. § 1319(g).

5.      Venue is proper in the Northern District of California pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## INTRADISTRICT ASSIGNMENT

6.      Intradistrict assignment of this matter to the San Jose Division of the Court is appropriate pursuant to Civil Local Rule 3-2(e).  The events or omissions which give rise to Baykeeper's claims occurred in Santa Clara County, which is under the jurisdiction of the San Jose Division of the Northern District of California.

## PARTIES

7.      Plaintiff Baykeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Oakland, California.  Baykeeper's 3,000 members live and/or recreate in and around the San Francisco Bay area.  Baykeeper is dedicated to protecting the water quality of San Francisco Bay for the benefit of its ecosystems and communities.  To further these goals, Baykeeper actively seeks federal and state agency implementation of the CWA, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.      Members of Baykeeper, including citizens, taxpayers, property owners, and residents, live, work, and travel near, and recreate in, San Francisco Bay and its tributaries, into which CSL discharges pollutants.  Baykeeper members use and enjoy San Francisco Bay and its tributaries for recreational, educational, scientific, conservation, aesthetic, spiritual, and other purposes.  CSL's discharges of stormwater containing pollutants impair each of these uses.  Thus, the interests of Baykeeper's members have been, are being, and will continue to be adversely affected by CSL's failure to comply with the CWA and the Industrial Stormwater Permit.

9.      Each annual report filed for the Facility since CSL submitted its June 20, 2011 "Notice of Intent" to comply with the terms of the 1997 Permit and the February 26, 2015 "Notice of Intent" for the Facility to comply with the terms of the 2015 Permit named "CSL Operating, LLC" as the operator.  Plaintiff is therefore informed and believes and thereon alleges that CSL operates the Facility.

## REGULATORY BACKGROUND

### The Problem of Stormwater Pollution

10.      Stormwater runoff is one of the most significant sources of water pollution in the nation and has been recognized as a leading cause of significant and cumulative harmful impacts to the water quality of San Francisco Bay.  With every rainfall event, hundreds of millions of gallons of polluted rainwater flow from local industrial facilities, such as the Facility, and pour into storm drains, local tributaries, and the Bay.  The consensus among state and federal agencies and water quality specialists is that stormwater pollution accounts for more than half of the total heavy metal pollution entering the San Francisco Bay watershed each year.

11.      Stormwater runoff from industrial sites such as the Facility causes harm to humans and aquatic life.  In particular, stormwater can contain heavy metal pollutants such as aluminum, chromium, copper, iron, lead, mercury, nickel, tin, and zinc, as well as high concentrations of suspended solids, and nitrate and nitrite.  Exposure and ingestion of heavy metals can cause health problems in people and aquatic animals, including neurological, physiological, and reproductive effects.  Heavy metals have been shown to alter activity in tissues and blood of fish.

12.      High concentrations of total suspended solids ("TSS") degrade optical water quality by reducing water clarity and decreasing light available to support photosynthesis.  TSS have been shown to alter predator-prey relationships (for example, turbid water might make it difficult for fish to see their prey).  Deposited solids alter habitat for fish, aquatic plants, and benthic organisms.  TSS can also be harmful to aquatic life because numerous pollutants, including metals and polycyclic aromatic hydrocarbons ("PAHs"), are adsorbed onto TSS.  Thus, higher concentrations of TSS mean higher concentrations of toxins associated with those sediments.  Inorganic sediments, including settleable

matter and suspended solids, have been shown to negatively impact species richness, diversity, and total biomass of filter feeding aquatic organisms on bottom surfaces.

### The Clean Water Act

13.     CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is in compliance with various enumerated CWA sections.  Among other things, CWA section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to CWA section 402, 33 U.S.C. § 1342.

14.     CWA section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved permit program for discharges.  In California, the State Board and its nine Regional Boards have approval from EPA to administer an NPDES permit program for the State.  The State Board and Regional Boards issue individual and general NPDES permits regulating water pollutant discharges from various categories of dischargers.

15.     CWA section 402(p), 33 U.S.C. § 1342(p), requires that NPDES permits be issued for stormwater discharges "associated with industrial activity."

16.     CWA section 301(b) requires that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater, must achieve technology-based effluent limitations by utilizing the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  *See* 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii).

17.      CWA section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. § 1365(a)(1); *see* 33 U.S.C. § 1362(5).

18.     CWA section 505(a) authorizes a citizen suit action for injunctive relief.  33 U.S.C. § 1365(a).

19.     CWA violators are subject to an assessment of civil penalties of up to $37,500 per day per violation for violations occurring after January 12, 2009.  33 U.S.C. § 1319(d); 40 C.F.R. §§ 19.1-19.4.

**State Regulations**

20.     Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality Standards, including water quality objectives and beneficial uses for navigable waters of the United States.  The CWA prohibits discharges from causing or contributing to a violation of such state Water Quality Standards.  *See* 33 U.S.C. § 1311(b)(1)(c); 40 C.F.R. §§ 122.4(a), (d); 40 C.F.R. § 122.44(d)(1).

21.     The State of California regulates water quality through the State Board and nine Regional Boards, and each Regional Board maintains a separate Water Quality Control Plan which contains Water Quality Standards for water bodies within its geographic area.

22.     The San Francisco Bay Regional Water Quality Control Board has adopted the "San Francisco Bay Basin (Region 2) Water Quality Control Plan" ("Basin Plan"), as amended by Resolution No. R2-2010-0100, setting forth the Water Quality Standards and beneficial uses for San Francisco Bay and its tributaries.

23.     The Basin Plan sets forth, among other things, narrative Water Quality Standards for floating material, oil and grease, sediment, settleable matter, and suspended materials, and sets forth numeric Water Quality Standards for pH, arsenic, cadmium, chromium VI, copper, cyanide, lead, mercury, nickel, selenium, silver, tributyltin, zinc, and PAHs.  *See* Basin Plan §§ 3.3.6, 3.3.7, 3.3.9, 3.3.12-3.3.14, 3.3.21, and Table 3-3.  The Basin Plan also includes site specific objectives ("SSOs"), which are Water Quality Standards for specific sites, for certain pollutants of concern, including copper and nickel.  *See* Basin Plan Table 3-3A.

24.     In addition, EPA has promulgated Water Quality Standards for toxic priority pollutants in all California water bodies (the "California Toxics Rule" or "CTR"), which apply to San Francisco Bay and its tributaries, unless expressly superseded by the Basin Plan.  65 Fed. Reg. 31,682 (May 18, 2000); 40 C.F.R. § 131.38.

**The Industrial Stormwater Permit**

25.     In California, the State Board has elected to issue a single, statewide general permit applicable to all stormwater discharges associated with industrial activity.  On April 17, 1997, the

COMPLAINT                                                                                                              5

State Board adopted the 1997 Permit, which was in effect through June 30, 2015.  On July 1, 2015, the 2015 Permit became effective and superseded the 1997 Permit, except for enforcement purposes.

26.     To discharge stormwater lawfully in California, industrial dischargers (i.e., facility operators) must secure coverage under the Industrial Stormwater Permit by filing a notice of intent and comply with its terms, or obtain and comply with an individual NPDES permit.  1997 Permit, p. II, VII; 2015 Permit, Section I(A) (Findings 8, 12), Attachment C (defining "discharger").

27.     The Industrial Stormwater Permit is an NPDES permit issued pursuant to CWA section 402(p), 33 U.S.C. § 1342(p).  Violations of the Industrial Stormwater Permit are also violations of the CWA.  1997 Permit, Section C(1); 2015 Permit, Section XXI(A).

28.     The Industrial Stormwater Permit contains certain absolute prohibitions.  The Industrial Stormwater Permit prohibits the direct or indirect discharge of materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by an NPDES permit, to the waters of the United States.  1997 Permit, Order Part A(1); 2015 Permit, Section III(B).  The Industrial Stormwater Permit prohibits stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance (1997 Permit, Order Part A(2); 2015 Permit, Sections III(C), VI(C)) and discharges that adversely impact human health or the environment (1997 Permit, Order Part C(1); 2015 Permit, Section VI(B)).  Finally, the Industrial Stormwater Permit prohibits discharges that cause or contribute to an exceedance of any applicable Water Quality Standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.  1997 Permit, Order Part C(2); 2015 Permit, Section VI(A).

29.     Under the CWA and the Industrial Stormwater Permit, dischargers must employ Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate stormwater pollution.  33 U.S.C. § 1311(b); 1997 Permit, Order Part B(3); 2015 Permit, Section X(H).  EPA has developed benchmark levels ("Benchmarks") that are objective guidelines to evaluate whether a permittee's BMPs achieve compliance with the BAT/BCT standards.  Final National Pollutant Discharge Elimination System (NPDES) General Permit for Stormwater Discharges From Industrial Activities ("Multi-Sector Permit"), 80 Fed. Reg. 34,403, 34,405 (June 16, 2015); Multi-Sector Permit,

73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008); Multi-Sector Permit, 65 Fed. Reg. 64,746, 64,766-67 (Oct. 30, 2000).

30.     The 2015 Permit includes Numeric Action Limits ("NALs") that are based on Benchmarks.  2015 Permit, Section I(M) (Finding 62).  Like Benchmarks, the NALs indicate "the overall pollutant control performance at any given facility."  *Id*. at Section I(M) (Finding 61).

31.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") at the time industrial activities begin.  1997 Permit, Section A(1)(a) and Order Part E(2); 2015 Permit, Sections I(I) (Finding 54), X(B).  The SWPPP must identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of stormwater and authorized non-stormwater discharges from the facility.  1997 Permit, Section A(2); 2015 Permit, Section X(G). The SWPPP must identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in stormwater and authorized non-stormwater discharges.  1997 Permit, Section A(2); 2015 Permit, Section X(H).  The SWPPP must include BMPs that achieve pollutant discharge reductions attainable via BAT and BCT.  1997 Permit, Order Part B(3); 2015 Permit, Sections I(D) (Finding 32), V(A).

32.     The SWPPP must include:  a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the stormwater conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and pollutant control measures; a description of stormwater management practices; a description of the BMPs to be implemented to reduce or prevent pollutants in stormwater discharges and authorized non-stormwater discharges; the identification and elimination of non-stormwater discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate-generating activities; and a description of individuals and their current responsibilities for developing and implementing the SWPPP.  1997 Permit, Sections A(1)-(10); 2015 Permit, Section X.

33.     The Industrial Stormwater Permit also requires facility operators to properly operate and maintain any facilities and systems of treatment and control installed or used to achieve

compliance with the conditions of the Industrial Stormwater Permit and requirements of the SWPPP at all times.  1997 Permit, Section C(5); 2015 Permit, Section XXI(F).

34.     The SWPPP and site maps must be assessed annually and revised as necessary to ensure accuracy and effectiveness.  1997 Permit, Sections A(1), B(3)-(4); 2015 Permit, Sections I(J) (Finding 55), X(B)(1).

35.     The 1997 Permit required facility operators to develop and implement a monitoring and reporting program ("MRP") when industrial activities begin at a facility.  1997 Permit, Section B(1)-(2) and Order Part E(3).  The MRP must have ensured that stormwater discharges were in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the 1997 Permit.  *Id.* at Section B(2) and B(10).  The MRP must have ensured that practices at the facility to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges were evaluated and revised to meet changing conditions at the facility, including revision of the SWPPP. *Id.*

36.     The 2015 Permit requires facility operators to monitor and sample stormwater discharges to ensure that the facility is complying with the terms of the permit.  2015 Permit, Sections I(J) (Findings 55-56); XI.

37.     Pursuant to the monitoring and reporting requirements of the Industrial Stormwater Permit, facility operators must conduct ongoing visual observations of stormwater and non-stormwater discharges and record responsive measures taken to eliminate unauthorized non-stormwater discharges and to reduce or prevent pollutants in stormwater and authorized non-stormwater discharges.  1997 Permit, Sections B(3)-(4); 2015 Permit, Section XI(A).  Facility operators must collect samples of stormwater discharges from all locations where stormwater may be discharged from the facility.  1997 Permit, Sections B(5), (7); 2015 Permit, Section XI(B)(4)-(5).  Through the 2014-2015 reporting period, facility operators were required to analyze stormwater samples for pH, total suspended solids, total organic carbon (or oil and grease as a substitute), specific conductance, toxic chemicals, and other pollutants which are likely to be present in significant quantities in stormwater discharging from the facility.  1997 Permit, Section B(5).

**STATEMENT OF FACTS**

**Facility Background**

38.    CSL operates the Facility located at 529 Aldo Avenue, Santa Clara, California 95054.

39.    The Facility is regulated by the Industrial Stormwater Permit.

40.    CSL submitted a Notice of Intent to comply with the 1997 Permit to the State Board on June 20, 2011.

41.    CSL submitted a Notice of Intent to comply with the 2015 Permit to the State Board on February 26, 2015.

42.    Operations at the Facility generally include, but are not limited to, plating processes. The Facility is categorized under SIC code 3471.

43.    Some operations at the Facility occur outdoors and are causing pollutants to be exposed to rainfall.

44.    The types of pollutants that the Facility releases into the immediate environment are known to include, or have the potential to include, among other contaminants: sediment (total suspended solids or "TSS"); heavy metals, such as aluminum, iron, zinc, and aluminum; acids, bleach, and nitrate and nitrite.

45.    The industrial materials stored and the pollutants generated at the Facility are exposed to stormwater flows.

46.    Activities at the Facility generate significant debris and particulate matter, which contain pollutants and settle on surfaces within the Facility.  During rain events, this pollution washes off of those surfaces and into stormwater discharge points, which flow to the Guadalupe River and San Francisco Bay.

**Activities Contributing to CWA Violations**

47.    CSL has not developed and/or implemented an adequate SWPPP at the Facility.

48.    CSL has not developed and/or implemented BMPs that adequately minimize the exposure of pollutants to stormwater at the Facility.

49.    CSL has not developed and/or implemented BMPs at the Facility that adequately control and minimize polluted runoff from the Facility.

50.     CSL has not developed and/or implemented BMPs at the Facility that adequately treat and remove pollutants in stormwater prior to discharge.

51.     CSL has not developed and/or implemented adequate measures to reduce or eliminate stormwater pollution that constitute BAT/BCT.

52.     CSL has not developed and/or implemented adequate BMPs at the Facility to achieve stormwater discharges that meet EPA Benchmarks, NALs, or applicable Water Quality Standards.

53.     CSL has not adequately evaluated and revised the Facility's SWPPP to address these failures.

54.     CSL has failed to properly operate and maintain the structures and systems that have been put in place at the Facility to achieve compliance with the Industrial Stormwater Permit and its SWPPP requirements.

55.     CSL has not developed and/or implemented an adequate monitoring and reporting program at the Facility.

56.     CSL's monitoring and reporting activities have not resulted in practices that adequately reduce or prevent pollutants from discharging from the stormwater flows from the Facility.

57.     CSL's monitoring activities have not effectively identified compliance problems at the Facility or resulted in effective revisions of the SWPPP.

58.     Due to CSL's lack of effective pollution prevention measures, including effective BMPs, and its failure to implement an effective monitoring and reporting program, stormwater from the Facility becomes polluted with many constituents.  The potential pollutants include: TSS, nitrate and nitrite, and heavy metals.  Pollutants become entrained in stormwater when such water flows over and across the outdoor areas of the Facility.

59.     Polluted stormwater is discharged from the Facility into San Francisco Bay, via the Guadalupe River and/or Sunnyvale East Channel.  San Francisco Bay and its tributaries are waters of the United States.

60.     CSL's annual stormwater sampling results indicate that the Facility's discharges of stormwater are consistently contaminated with higher levels of pollutants than are permissible under the Industrial Stormwater Permit.

61.    CSL's annual stormwater sampling results indicate that the Facility's discharges of stormwater are regularly contaminated with higher levels of pollutants than are consistent with BMPs that constitute BAT/BCT.

62.    CSL's repeated stormwater exceedances of EPA Benchmarks over the past five years for pollutants, including aluminum, nitrate and nitrite, pH, zinc, and iron, indicate that CSL has failed and continues to fail to meet BAT/BCT.

## CLAIMS

## FIRST CLAIM FOR RELIEF

**Discharge in Violation of Effluent Limitations of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

63.    Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

64.    The Industrial Stormwater Permit's SWPPP requirements and effluent limitations require dischargers to reduce or prevent pollutants in their stormwater discharges through the implementation of measures that must achieve BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

65.    CSL has discharged and continues to discharge stormwater from the Facility containing levels of pollutants that do not achieve compliance with the BAT/BCT requirements during every significant rain event occurring from June 20, 2011 through the present.  CSL's failure to develop and/or implement BMPs adequate to achieve the pollutant discharge reductions attainable via BAT or BCT at the Facility is a violation of the Industrial Stormwater Permit and the CWA.  *See* 1997 Permit, Order Part B(3); 2015 Permit, Sections I(D) (Finding 32), V(A); 33 U.S.C. § 1311(b).

66.    Each day since at least June 20, 2011 that CSL has discharged stormwater containing pollutants in violation of the Industrial Stormwater Permit, specifically Effluent Limitation B(3) of the 1997 Permit, is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

67.    CSL's CWA violations described in the paragraphs above will continue in the future, as violations of Sections I(D) and V(A) of the 2015 Permit, until CSL develops and implements BMPs at the Facility adequate to achieve pollutant discharge reductions attainable via BAT and BCT.

68.     By committing the acts and omissions alleged above, CSL is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

69.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

70.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SECOND CLAIM FOR RELIEF

**Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan, in Violation of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

71.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

72.     The Industrial Stormwater Permit requires dischargers of stormwater associated with industrial activity to develop and implement an adequate SWPPP when they commence industrial activity.  1997 Permit, Section A(1); 2015 Permit, Section X(B).

73.     CSL, as of June 20, 2011, had commenced industrial activity and continues to conduct industrial activity at the Facility.

74.     CSL has failed and continues to fail to develop and implement an adequate SWPPP or implement all necessary revisions to the SWPPP for the Facility as required by the Industrial Stormwater Permit.

75.     CSL has failed and continues to fail to develop or implement a SWPPP for the Facility that includes BMPs adequate to meet the requirements of the Industrial Stormwater Permit, specifically, Section A of the 1997 Permit and Section X of the 2015 Permit.

76.     CSL has failed and continues to fail to adequately develop or implement a SWPPP at the Facility that prevents discharges from violating the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit.

COMPLAINT                                                                                          12

77. Each day since June 20, 2011 that CSL has failed to adequately develop and/or implement a SWPPP for the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

78. CSL has been in violation of the Industrial Stormwater Permit's SWPPP requirements every day since June 20, 2011.  CSL will continue to be in violation of the SWPPP requirements each day that CSL fails to develop and fully implement an adequate SWPPP for the Facility.

79. By committing the acts and omissions alleged above, CSL is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

80. An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

81. An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

### THIRD CLAIM FOR RELIEF

**Failure to Develop and Implement an Adequate Monitoring and Reporting Program,**

**in Violation of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

82. Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

83. Section B and Order Part E(3) of the 1997 Permit require dischargers of stormwater associated with industrial activity to develop and implement a monitoring and reporting program (including, among other things, sampling and analysis of discharges) no later than August 1, 1997.

84. The 2015 Permit requires facility operators to monitor and sample stormwater discharges to ensure that the facility is complying with the terms of the permit.  2015 Permit, Sections I(J) (Findings 55-56); XI.

85. CSL has failed and continues to fail to develop and implement an adequate monitoring and reporting program or to implement all necessary revisions to the monitoring and reporting

1   program at the Facility as required by the Industrial Stormwater Permit.

2        86.    CSL's monitoring and reporting program has failed and continues to fail to ensure that

3   discharges from the Facility are in compliance with the Discharge Prohibitions, Effluent Limitations,

4   and Receiving Water Limitations as required in Sections B(2) and (10) of the 1997 Permit.

5        87.    CSL has failed and continues to fail to effectively identify compliance problems at the

6   Facility or to effectively revise the SWPPP to address such pollution problems as required by Sections

7   B(2)-(4) of the 1997 Permit and Section XI(A) of the 2015 Permit.

8        88.    Each day since June 20, 2011 that CSL has failed to develop and implement an

9   adequate monitoring and reporting program for the Facility in violation of the Industrial Stormwater

10   Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

11        89.    CSL has been in violation of the monitoring and reporting requirements every day since

12   June 20, 2011.  CSL will continue to be in violation of the monitoring and reporting requirements each

13   day that CSL fails to develop and fully implement an adequate monitoring and reporting program for

14   the Facility.

15        90.    By committing the acts and omissions alleged above, CSL is subject to an assessment

16   of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

17        91.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

18   1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm

19   Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at

20   law.

21        92.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

22   controversy exists as to the rights and other legal relations of the Parties.

23   **FOURTH CLAIM FOR RELIEF**

24   **Unpermitted Discharge of Pollutants in Violation of CWA Section 301(a)**

25   **(Violations of 33 U.S.C. § 1311)**

26        93.    Plaintiff incorporates the allegations contained in all other paragraphs as though fully

27   set forth herein.

28        94.    CSL has discharged and continues to discharge pollutants from the Facility absent

compliance with the Industrial Stormwater Permit. Thus, CSL's discharges constitute an unpermitted discharge of pollutants from the Facility to waters of the United States in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

95. CSL has been in violation of CWA section 301(a) every day it has discharged stormwater from the Facility to waters of the United States since June 20, 2011. CSL will continue to be in violation of the CWA each day that it has unpermitted stormwater discharges from the Facility to waters of the United States.

96. By committing the acts and omissions alleged above, CSL is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

97. An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

98. An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## **RELIEF REQUESTED**

Baykeeper respectfully requests this Court to grant the following relief:

1. Declare Defendant to have violated and to be in violation of sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from the Facility in violation of a permit issued pursuant to section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent limitations which include the Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology requirements, and for failing to comply with the substantive and procedural requirements of the Industrial Stormwater Permit;

2. Enjoin Defendant from discharging pollutants from the Facility to stormwater discharge points, which discharge to San Francisco Bay;

3. Order Defendant to restore all receiving waters damaged by CSL's illegal discharges of pollutants from the Facility;

4. Enjoin Defendant from violating sections 301(a) and (b) and section 402(p) of the

Clean Water Act and from violating the substantive and procedural requirements of the Industrial Stormwater Permit at the Facility;

5.      Order Defendant to pay civil penalties of up to $37,500 per day for all violations occurring after January 12, 2009 in accordance with CWA section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. §§ 19.1-19.4;

6.      Award Plaintiff its costs (including reasonable attorney, witness, and consultant fees) as authorized by the CWA section 505(d), 33 U.S.C. § 1365(d);

7.      Award such other relief as this Court may deem appropriate.


Dated:  December 9, 2015                          Respectfully Submitted,


                                                 /s/ Erica A. Maharg
                                                 _____

                                                 Erica A. Maharg
                                                 Attorneys for Plaintiff
                                                 SAN FRANCISCO BAYKEEPER

EXHIBIT 1



SAN FRANCISCO
BAYKEEPER®

September 17, 2015


*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

CSL Operating, LLC
Attn: Mahesh Naik, President/General Mgr.
     Tim Mickael, CEO
529 Aldo Ave.
Santa Clara, CA 95054

CSL Operating, LLC
5845 Strasbourg Court
Reno, NV 89511

CSL Operating, LLC
c/o National Registered Agents, Inc.
818 W. 7th St.
Los Angeles, CA 90017

**Re:    Notice of Violation and Intent to File Suit under the Clean Water Act**

Dear Mr. Naik and Mr. Mickael:

      I am writing on behalf of San Francisco Baykeeper ("Baykeeper") to give notice that Baykeeper intends to file a civil action against CSL Operating, LLC ("CSL") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA") at CSL's facility, located at 529 Aldo Avenue, Santa Clara, California (the "Facility").

      Baykeeper is a non-profit public benefit corporation organized under the laws of California, with its office in Oakland, California. Baykeeper's purpose is to protect and enhance the water quality and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area, for the benefit of its ecosystems and communities. Baykeeper has over three thousand members who use and enjoy San Francisco Bay and other waters for various recreational, educational, and spiritual purposes. Baykeeper's members' use and enjoyment of these waters are negatively affected by the pollution caused by CSL's operations.

      This letter addresses CSL's unlawful discharge of pollutants from the Facility via stormwater into San Francisco Bay. Specifically, Baykeeper's investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the General Industrial Stormwater Permit issued by the State of California (NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality




Notice of Intent to File Suit
September 17, 2015
Page 2 of 8

Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Permit") and by
Order No. 2014-0057-DWQ ("2015 Permit") (collectively, the "Industrial Stormwater
Permit").[1]

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil
action under CWA section 505(a), a citizen must give notice of his or her intent to file
suit.  33 U.S.C. § 1365(b).  Notice must be given to the alleged violator, the U.S.
Environmental Protection Agency ("EPA"), and the State in which the violations occur.
As required by section 505(b), this Notice of Violation and Intent to File Suit provides
notice to CSL of the violations that have occurred and which continue to occur at the
Facility.  After the expiration of sixty (60) days from the date of this Notice of Violation
and Intent to File Suit, Baykeeper intends to file suit in federal court against CSL under
CWA section 505(a) for the violations described more fully below.

During the 60-day notice period, Baykeeper is willing to discuss effective
remedies for the violations noticed in this letter.  We suggest that CSL contact us within
the next twenty (20) days so that these discussions may be completed by the conclusion
of the 60-day notice period.  Please note that we do not intend to delay the filing of a
complaint in federal court, even if discussions are continuing when the notice period
ends.

## I.      THE LOCATION OF THE ALLEGED VIOLATIONS

### A.  The Facility

CSL's Facility is located at 529 Aldo Avenue in Santa Clara, California.  At the
Facility, CSL conducts plating processes.  Potential pollutants from the Facility include
total suspended solids ("TSS"), acids, debris, solvents, and nitrates + nitrites.  Stormwater
from the Facility discharges, via the Santa Clara storm sewer system and/or freshwater
tributaries, to San Francisco Bay.

### B.  The Affected Water

San Francisco Bay is a water of the United States.  The CWA requires that water
bodies such as San Francisco Bay meet water quality objectives that protect specific
"beneficial uses."  The beneficial uses of San Francisco Bay and its tributaries include
commercial and sport fishing, estuarine habitat, fish migration, navigation, preservation
of rare and endangered species, water contact and non-contact recreation, shellfish
harvesting, fish spawning, and wildlife habitat.  Contaminated stormwater from the
Facility adversely affects the water quality of the San Francisco Bay watershed and
threatens the beneficial uses and ecosystem of this watershed, which includes habitat for
threatened and endangered species.

---

[1] On April 1, 2014, the State Water Resources Control Board adopted 2015 Permit.  As of July 1, 2015, the
2015 Permit superseded the 1997 Permit except for the purpose of enforcing against violations of the 1997
Permit.  2015 Permit, Section I.A. (Finding 6).

Notice of Intent to File Suit
September 17, 2015
Page 3 of 8

## II.      THE FACILITY'S VIOLATIONS OF THE CLEAN WATER ACT

It is unlawful to discharge pollutants to waters of the United States, such as San Francisco Bay and its tributaries, without an NPDES permit or in violation of the terms and conditions of an NPDES permit.  CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p) (requiring NPDES permit issuance for the discharge of stormwater associated with industrial activities).  The Industrial Stormwater Permit authorizes certain discharges of stormwater, conditioned on compliance with its terms.

On or around June 20, 2011, CSL submitted a Notice of Intent ("NOI") to be authorized to discharge stormwater from the Facility under the 1997 Permit.  On February 26, 2015, CSL submitted an NOI to be authorized to discharge stormwater from the Facility under the 2015 Permit.  However, information available to Baykeeper indicates that stormwater discharges from the Facility have violated several terms of the Industrial Stormwater Permit and the CWA.  Apart from discharges that comply with the Industrial Stormwater Permit, the Facility lacks NPDES permit authorization for any other discharges of pollutants into waters of the United States.

### A.  Discharges in Excess of BAT/BCT Levels

The Effluent Limitations of the Industrial Stormwater Permit prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of best available technology economically achievable ("BAT") for toxic pollutants[2] and best conventional pollutant control technology ("BCT") for conventional pollutants.[3]  1997 Permit, Order Part B.3.; 2015 Permit, Section X.H.  EPA has published Benchmark values set at the maximum pollutant concentration present if an industrial facility is employing BAT and BCT, as listed in Attachment 1 to this letter.[4]

CSL's self-reported exceedances of Benchmark values since submitting its initial NOI on June 20, 2011, identified in Attachment 2 to this letter, indicate that CSL has failed and is failing to employ measures that constitute BAT and BCT in violation of the requirements of the Industrial Stormwater Permit.  Baykeeper alleges and notifies CSL that its stormwater discharges from the Facility have consistently contained and continue to contain levels of pollutants that exceed Benchmark values for aluminum, nitrate plus nitrite (N+N), pH, zinc, and iron.

---

[2] BAT is defined at 40 C.F.R. § 442.23.  Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.
[3] BCT is defined at 40 C.F.R. § 442.22.  Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, oil and grease, pH, and fecal coliform.
[4] The Benchmark values are part of EPA's Multi-Sector General Permit ("MSGP") and can be found at: http://water.epa.gov/polwaste/npdes/stormwater/EPA-Multi-Sector-General-Permit-MSGP.cfm.  The most recent sector-specific Benchmarks are available at: http://water.epa.gov/polwaste/npdes/stormwater/upload/msgp2015_part8.pdf ("2015 MSGP").  SIC Code 3471 is covered under Sector AA in the 2015 MSGP.

CSL's ongoing discharges of stormwater containing levels of pollutants above EPA Benchmark values and BAT- and BCT-based levels of control also demonstrate that CSL has not developed and implemented sufficient Best Management Practices ("BMPs") at the Facility. Proper BMPs could include, but are not limited to, moving certain pollution-generating activities under cover or indoors, capturing and effectively filtering or otherwise treating all stormwater prior to discharge, frequent sweeping to reduce the build-up of pollutants on-site, installing filters in downspouts and storm drains, and other similar measures.

CSL's failure to develop and/or implement adequate pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial Stormwater Permit each and every day CSL discharges stormwater without meeting BAT/BCT. Baykeeper alleges that CSL has discharged stormwater containing excessive levels of pollutants from the Facility to San Francisco Bay during at least every significant local rain event over 0.1 inches since June 20, 2011. Attachment 3 compiles all dates since June 20, 2011 when a significant rain event occurred. CSL is subject to civil penalties for each violation of the Industrial Stormwater Permit and the CWA since it filed its initial NOI on June 20, 2011.

**B.  Discharges Impairing Receiving Waters**

The Industrial Stormwater Permit's Discharge Prohibitions disallow stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance. *See* 1997 Permit, Order Part A.2.; 2015 Permit, Sections III.C., VI.C. The Industrial Stormwater Permit also prohibits stormwater discharges to surface or groundwater that adversely impact human health or the environment. 1997 Permit, Order Part C.1.; 2015 Permit, Section VI.B. Receiving Water Limitations of the Industrial Stormwater Permit prohibit stormwater discharges that cause or contribute to an exceedance of applicable Water Quality Standards ("WQS"). 1997 Permit, Order Part C.2.; 2015 Permit, Section VI.A. Applicable WQS are set forth in the California Toxics Rule ("CTR")[5] and Chapter 3 of the San Francisco Bay Basin (Region 2) Water Quality Control Plan ("Basin Plan").[6] *See* Attachment 1. Exceedances of WQS are violations of the Industrial Stormwater Permit, the CTR, and the Basin Plan.

The Basin Plan establishes WQS for San Francisco Bay and its tributaries, including but not limited to the following:

- Waters shall not contain substances in concentrations that result in the deposition of material that cause nuisance or adversely affect beneficial uses.

---

[5] The CTR is set forth at 40 C.F.R. § 131.38 and is explained in the Federal Register preamble accompanying the CTR promulgation set forth at 65 Fed. Reg. 31,682 (May 18, 2000).
[6] The Basin Plan is published by the San Francisco Bay Regional Water Quality Control Board at: http://www.waterboards.ca.gov/sanfranciscobay/basin_planning.shtml#2004basinplan.

- Waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses.

- Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.  Increases from normal background light penetration or turbidity relatable to waste discharge shall not be greater than 10 percent in areas where natural turbidity is greater than 50 NTU.

- All waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce other detrimental responses in aquatic organisms.

- Surface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use.  The Basin Plan, Table 3-3, identifies specific marine water quality objectives for toxic pollutants.[7]

Baykeeper alleges that CSL's stormwater discharges have caused or contributed to exceedances of the Receiving Water Limitations in the Industrial Stormwater Permit and the WQS set forth in the Basin Plan and CTR.  These allegations are based on CSL's self-reported data submitted to the San Francisco Bay Regional Water Quality Control Board.  The sampling results indicate that CSL's discharges are causing or threatening to cause pollution, contamination, and/or nuisance; adversely impact human health or the environment; and violate applicable WQS.  For example, CSL's sampling results indicate exceedances of numeric WQS for pH and zinc.  *See* Attachment 2.

Baykeeper alleges that each day that CSL has discharged stormwater from the Facility, CSL's stormwater has contained levels of pollutants that exceeded one or more of the Receiving Water Limitations and/or applicable WQS in San Francisco Bay.  Baykeeper alleges that CSL has discharged stormwater exceeding Receiving Water Limitations and/or WQS from the Facility to San Francisco Bay during at least every significant local rain event over 0.1 inches since June 20, 2011.  *See* Attachment 3.  Each discharge from the Facility that violates a Receiving Water Limitation or has caused or contributed, or causes or contributes, to an exceedance of an applicable WQS constitutes a separate violation of the Industrial Stormwater Permit and the CWA.  CSL is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA since June 20, 2011.

---

[7] Basin Plan, Table 3-3 is available at:
http://www.waterboards.ca.gov/rwqcb2/water_issues/programs/planningtmdls/basinplan/web/tab/tab_3-03.pdf.

### C.  Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan

The Industrial Stormwater Permit requires dischargers to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP").  1997 Permit, Section A.1.a. and Order Part E.2.; 2015 Permit, Sections I.I. (Finding 54), X.B.  The Industrial Stormwater Permit also requires dischargers to make all necessary revisions to existing SWPPPs promptly.  1997 Permit, Order Part E.2.; 2015 Permit, Section X.B.

The SWPPP must include, among other requirements, the following:  a site map, a list of significant materials handled and stored at the site, a description and assessment of all potential pollutant sources, a description of the BMPs that will reduce or prevent pollutants in stormwater discharges, and specifications of BMPs designed to reduce pollutant discharge to BAT and BCT levels.  1997 Permit, Sections A.1.-A.10.; 2015 Permit, Section X.  Moreover, the Industrial Stormwater Permit requires dischargers to evaluate and revise SWPPPs to ensure they meet these minimum requirements, in particular that the necessary BMPs are in place and being implemented.  *See* 1997 Permit, Section A.9. (requiring a comprehensive site compliance evaluation completed each reporting year, and revisions to the SWPPP implemented within 90 days after the evaluation); 2015 Permit, Section X.D.2.a. (obligating the discharger to "ensure its SWPPP is developed, implemented and revised as necessary to be consistent with any applicable municipal, state, and federal requirements that pertain to the requirements in [the 2015 Permit].").

Based on information available to Baykeeper, CSL has failed to prepare and/or implement an adequate SWPPP and/or to revise the SWPPP to satisfy each of the requirements of the Industrial Stormwater Permit.  For example, CSL's past or current SWPPP has not/does not include and/or CSL has not implemented adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels in accordance with the Industrial Stormwater Permit, as evidenced by the data in Attachment 2.

Moreover, CSL's latest SWPPP, revised in July 2015 ("CSL SWPPP"), does not meet the requirements of the 2015 Permit.  The CSL SWPPP describes "minimum BMPs," including Good Housekeeping, Preventative Maintenance, Spill Response, Materials Handling and Waste Storage, Erosion Control, Employee Training, and Recording Keeping and Reporting.  CSL SWPPP, pp. 5.2-5.8.  The Good Housekeeping BMPs are described in the most general terms, without describing how the BMPs will be implemented, the locations where the BMPs shall be implemented, and the procedures for implementing the BMPs, as required by the 2015 Permit.  *See* 2015 Permit, Section X.H.1., note 12 (requiring "Dischargers to select, design, install and implement" BMPs that meet the minimum Good Housekeeping BMPs described) and Section X.H.4. (requiring that the SWPPP specifically describe the procedure for each BMP).

Accordingly, CSL has violated the CWA each and every day that it has failed to develop and/or implement an adequate SWPPP meeting all of the requirements of the Industrial Stormwater Permit, and CSL will continue to be in violation every day until it

Case 5:15-cv-05633-BLF   Document 1   Filed 12/10/15   Page 25 of 29
Notice of Intent to File Suit
September 17, 2015
Page 7 of 8

develops and implements an adequate SWPPP.  CSL is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring since it filed its initial NOI on June 20, 2011.

### D.   Unpermitted Discharges

Section 301(a) of the CWA prohibits the discharge of any pollutant into waters of the United States unless the discharge is authorized by a NPDES permit issued pursuant to section 402 of the CWA.  *See* 33 U.S.C. §§ 1311(a), 1342.  CSL sought coverage for the Facility under the Industrial Stormwater Permit, which states that any discharge from an industrial facility not in compliance with the Industrial Stormwater Permit "must be either eliminated or permitted by a separate NPDES permit."  1997 Permit, Order Part A.1.; 2015 Permit, Sections I.A. (Finding 8) and I.C. (Finding 28).  Because CSL has not obtained coverage under a separate NPDES permit and has failed to eliminate discharges not permitted by the Industrial Stormwater Permit, each and every discharge from the Facility described herein not in compliance with the Industrial Stormwater Permit has constituted and will continue to constitute a discharge without CWA permit coverage in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

## IV.     PERSON RESPONSIBLE FOR THE VIOLATIONS.

CSL Operating, LLC is the person responsible for the violations at the Facility described above.

## V.     NAME AND ADDRESS OF NOTICING PARTY

San Francisco Baykeeper
1736 Franklin Street, Suite 800
Oakland, CA 94612
(510) 735-9700

## VI.     COUNSEL

Baykeeper is represented by the following counsel in this matter, to whom all communications should be directed:

Erica A. Maharg, Staff Attorney
George Torgun, Managing Attorney
San Francisco Baykeeper
1736 Franklin Street, Suite 800
Oakland, CA 94612
(510) 735-9700

Erica A. Maharg: (510) 735-9700 x106, erica@baykeeper.org
George Torgun: (510) 735-9700 x105, george@baykeeper.org

Notice of Intent to File Suit
September 17, 2015
Page 8 of 8

## VII.   REMEDIES.

Baykeeper intends, at the close of the 60-day notice period or thereafter, to file a citizen suit under CWA section 505(a) against CSL for the above-referenced violations. Baykeeper will seek declaratory and injunctive relief to prevent further CWA violations pursuant to CWA sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), and such other relief as permitted by law.  In addition, Baykeeper will seek civil penalties pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, against CSL in this action.  The CWA imposes civil penalty liability of up to $37,500 per day per violation for violations occurring after January 12, 2009.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4. Baykeeper will seek to recover attorneys' fees, experts' fees, and costs in accordance with CWA section 505(d), 33 U.S.C. § 1365(d).

As noted above, Baykeeper is willing to meet with you during the 60-day notice period to discuss effective remedies for the violations noted in this letter.  Please contact me or George Torgun to initiate these discussions.

Sincerely,

Erica A. Maharg
Staff Attorney
San Francisco Baykeeper

Cc:

Gina McCarthy, Administrator
U.S. Environmental Protection Agency
Mail Code: 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Bruce Wolfe, Executive Officer
Regional Water Quality Control Board
San Francisco Bay Region
1515 Clay Street, Suite 1400
Oakland, CA 94612

Jared Blumenfeld, Regional Administrator
U.S. EPA, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Thomas Howard, Executive Director
State Water Resources Control Board
1001 I Street
Sacramento, CA 95814

## Attachment 1:  EPA Benchmarks and Water Quality Standards for Discharges to Freshwater

### A. EPA Benchmarks, 2000 and 2015 Multi-Sector General Permit ("MSGP")

| Parameter | Units | Benchmark value | Source |
|---|---|---|---|
| pH | SU | 6.0 − 9.0 | 2000 MSGP |
| Total Suspended Solids | mg/L | 100 | 2000 MSGP |
| Chemical Oxygen Demand | mg/L | 120 | 2000 MSGP |
| Oil and Grease | mg/L | 15 | 2000 MSGP |
| Aluminum Total | mg/L | 0.75 | 2015 MSGP |
| Iron Total | mg/L | 1.0 | 2015 MSGP |
| Zinc Total | mg/L | 0.13 | 2015 MSGP* |
| Nitrate plus Nitrite Nitrogen | mg/L | 0.16 | 2015 MSGP |

**\*** Assuming a water hardness range of 100-125 mg/L

### B. Water Quality Standards (Basin Plan, Tables 3-3, 3-3A)

| Parameter | Units | WQS value | Source |
|---|---|---|---|
| pH | SU | 6.5 − 8.5 | Basin Plan |
| Zinc | mg/L | 0.12 | Basin Plan |

# Attachment 2:  Table of Exceedances for
# CSL Operating, LLC

Table containing each stormwater sampling result which exceeds EPA Benchmarks and/or causes or contributes to an exceedance of Basin Plan Water Quality Standards.  The EPA Benchmarks and Basin Plan Water Quality Standards are listed in Attachment 1.  All stormwater samples were reported by the Facility during the past five (5) years.

| Rpt Period | Sample Date | Parameter | Result | Unit |
|------------|-------------|-----------|--------|------|
| 2011-2012 | 12/15/2011 | Al | 1.9 | mg/L |
| 2011-2012 | 2/13/2012 | Al | 1.16 | mg/L |
| 2012-2013 | 11/21/2012 | Al | 1.34 | mg/L |
| 2013-2014 | 11/20/2013 | Al | 3.33 | mg/L |
| 2013-2014 | 2/6/2014 | Al | 1.14 | mg/L |
| 2014-2015 | 2/6/2015 | Al | 1.48 | mg/L |
| 2014-2015 | 2/6/2015 | Fe | 6.14 | mg/L |
| 2011-2012 | 12/15/2011 | N+N | 14.1 | mg/L |
| 2011-2012 | 2/13/2012 | N+N | 5.8 | mg/L |
| 2012-2013 | 11/21/2012 | N+N | 5.1 | mg/L |
| 2012-2013 | 12/26/2012 | N+N | 2.8 | mg/L |
| 2013-2014 | 11/20/2013 | N+N | 18.6 | mg/L |
| 2013-2014 | 2/6/2014 | N+N | 10.6 | mg/L |
| 2014-2015 | 12/2/2014 | N+N | 2.3 | mg/L |
| 2014-2015 | 2/6/2015 | N+N | 12 | mg/L |
| 2013-2014 | 11/20/2013 | pH | 5.18 | SU |
| 2013-2014 | 2/6/2014 | pH | 5.19 | SU |
| 2011-2012 | 12/15/2011 | Zn | 2.58 | mg/L |
| 2011-2012 | 2/13/2012 | Zn | 1.42 | mg/L |
| 2012-2013 | 11/21/2012 | Zn | 1.11 | mg/L |
| 2012-2013 | 12/26/2012 | Zn | 0.657 | mg/L |
| 2013-2014 | 11/20/2013 | Zn | 2.86 | mg/L |
| 2013-2014 | 2/6/2014 | Zn | 1.41 | mg/L |
| 2014-2015 | 12/2/2014 | Zn | 0.596 | mg/L |
| 2014-2015 | 2/6/2015 | Zn | 2.73 | mg/L |

## Attachment 3: Alleged Dates of Exceedances by
## CSL Operating, LLC
## June 20, 2011 to September 17, 2015

Days with precipitation one-tenth of an inch or greater, as reported by NOAA's National Climatic Data Center; San Jose, CA station, GHCND:USW00023293, when a stormwater discharge from the Facility is likely to have occurred.   http://www.ncdc.noaa.gov/cdo-web/search

| 2011 | 2012 | 2013 | 2014 | 2015 |
|------|------|------|------|------|
| 6/28 | 1/20 | 1/6 | 2/6 | 2/6 |
| 10/3 | 1/21 | 1/24 | 2/7 | 2/8 |
| 10/4 | 1/23 | 2/19 | 2/26 | 3/11 |
| 10/5 | 2/13 | 3/7 | 2/28 | 4/6 |
| 11/4 | 2/29 | 4/4 | 3/1 | 4/7 |
| 11/5 | 3/16 | 9/21 | 3/3 | 4/25 |
| 11/19 | 3/24 | 11/19 | 3/29 | 5/14 |
| 11/20 | 3/25 | 11/20 | 3/31 | 6/10 |
| | 3/27 | | 4/1 | |
| | 3/31 | | 4/25 | |
| | 4/10 | | 9/25 | |
| | 4/12 | | 10/25 | |
| | 4/13 | | 10/31 | |
| | 4/25 | | 11/12 | |
| | 6/4 | | 11/13 | |
| | 10/22 | | 11/20 | |
| | 11/1 | | 11/29 | |
| | 11/17 | | 11/30 | |
| | 11/18 | | 12/2 | |
| | 11/21 | | 12/3 | |
| | 11/28 | | 12/11 | |
| | 11/30 | | 12/12 | |
| | 12/2 | | 12/15 | |
| | 12/5 | | 12/16 | |
| | 12/12 | | 12/17 | |
| | 12/15 | | 12/19 | |
| | 12/17 | | | |
| | 12/22 | | | |
| | 12/23 | | | |
| | 12/25 | | | |
| | 12/26 | | | |
| | 12/29 | | | |